IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

Ninety-seven, more or less, 1.2
pound wedges of Gouda cheese,
in article of food labelled in
part:

"BRAVO FARMS *** HANDMADE
CHEESE *** AGED > 60 DAYS PLANT
# 06-827 TRAVER, CA 93673 ***
DUTCH-STYLE GOUDA ***"

and

Fourteen, more or less, 40
pound blocks of white cheddar
cheese, articles of food,
labelled in part:

"SAGE, WHITE PEPPER, AND ONION
*** 06-827 *** 8 3 10"

and

all other articles of cheese in
any size and type of container
labelled or un-labelled, except
for pasteurized cheese curds
that are located anywhere on
the premises of Bravo Farms,
LLC, 3660 Highway 99, Traver,
California,

      Defendants,

and

Case No: 1:11-CV-00115-OWW-MJ

BRAVO FARMS CHEESE, LLC, and
JONATHAN VAN RYN

      Claimants-Defendants.

### CONSENT DECREE OF CONDEMNATION AND PERMANENT INJUNCTION

On January 21, 2011, the United States of America
("Plaintiff"), by and through its attorneys, filed a Verified
Complaint for Forfeiture *In Rem* ("Complaint") against the
articles described above.  The articles proceeded against are
articles of food within the meaning of the Federal Food, Drug,
and Cosmetic Act ("the Act"), 21 U.S.C. § 321(f).  The Complaint
alleges that the articles are adulterated while held for sale
after shipment in interstate commerce, within the meaning of
21 U.S.C. § 342(a)(4), in that they have been prepared, packed,
or held under insanitary conditions whereby they may have become
contaminated with filth, or whereby they may have been rendered
injurious to health.

In response to the Complaint, on January 25, 2011, this
Court issued a Warrant for Arrest *In Rem* directing the United
States Marshal for this District to seize the articles.  The
United States Marshal executed the seizure on January 27, 2011.

On February 28, 2011, Jonathan Van Ryn, on behalf of and as
owner of Bravo Farms Cheese, LLC ("Bravo Farms") (collectively,
"Claimants"), intervened and filed a Verified Claim to all of
the seized articles.  Claimants affirm that Bravo Farms is the

2

sole owner of the seized articles, and that no other person has
an interest in the seized articles.  No other party has filed a
claim to the seized articles.  Claimants further affirm that
they shall indemnify and hold the United States harmless should
any party or parties hereafter file or seek to file a claim or
to intervene in this action and obtain any part of the seized
articles.  Bravo Farms and Van Ryn (hereinafter, collectively,
"Defendants"), having appeared and voluntarily consented to the
entry of this Decree without contest, solely for the purpose of
settling this case, without admitting or denying the allegations
of the complaint and disclaiming any liability in connection
herewith, before any testimony has been taken, and waiving the
filing and service of an amended complaint seeking injunctive
relief, and without requiring the government to file a separate
action for injunctive relief, and the United States having
consented to this Decree:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    This Court has subject matter jurisdiction over this
action pursuant to 28 U.S.C. § 1345 and 21 U.S.C. §§ 332 and
334, and personal jurisdiction over all parties to this action.
Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c)
and 1395.

2.    The seized articles are articles of food that are
adulterated while held for sale after shipment in interstate

commerce, within the meaning of 21 U.S.C. § 342(a)(4), in that they have been prepared, packed, or held under insanitary conditions whereby they may have become contaminated with filth, or whereby they may have been rendered injurious to health.

3.   The seized articles are, therefore, condemned pursuant to 21 U.S.C. § 334(a) and forfeited to the United States.

4.   Pursuant to 21 U.S.C. § 334(e), Bravo Farms shall pay to the United States all court costs and fees, storage, and other proper expenses of this proceeding incurred to date, including, but not limited to, those incurred by the United States Marshal, and such additional expenses as may hereinafter be incurred and taxed.  Bravo Farms shall pay these costs within ten (10) calendar days after receiving notice of such costs from the United States Food and Drug Administration ("FDA"), the United States Marshal, or the United States Attorney for the Eastern District of California.

5.   Within twenty (20) calendar days of entry of this Decree, Bravo Farms shall execute and file with the clerk of this Court a good and sufficient penal bond with surety in the amount of one hundred eighty thousand dollars ($180,000.00) in a form acceptable to the clerk of this Court and payable to the United States of America, and conditioned on Defendants abiding by and performing all of the terms and conditions of this Decree

and of such further orders and decrees as may be entered in this
proceeding.

6.   Within twenty-five (25) calendar days after filing the
penal bond, pursuant to paragraph 5, Bravo Farms shall:
(a) give written notice to FDA, at the address listed in
paragraph 30, that Bravo Farms is prepared to attempt to bring
the condemned articles into compliance with the law, and
(b) submit a written statement to FDA detailing Bravo Farms'
proposed plan to bring the condemned articles into compliance
with the law (the "Reconditioning Proposal").

7.   Bravo Farms shall not commence, or cause or permit any
other person to commence, attempting to bring the condemned
articles into compliance with the law unless and until Bravo
Farms receives:  (a) written approval of the Reconditioning
Proposal from FDA, and (b) written authorization from FDA to
commence reconditioning.

8.   Following Bravo Farms' payment of costs and posting of
the Bond, as required by paragraphs 4-5 of this Decree, and
following Bravo Farms' receipt of written authorization to
commence reconditioning as described in paragraph 7, the United
States Marshal, upon receiving notice from the United States
Attorney or FDA, shall release the appropriate Lot of condemned
articles, as described in paragraphs 8(A)-(E) below, from his
custody to the custody of Bravo Farms for the sole purpose of

attempting to bring such articles into compliance with the law in accordance with the Reconditioning Proposal.  The schedule for release of the condemned articles is as follows:

A.    The condemned articles in Lot 1, consisting of approximately one-fifth (1/5) of the articles (by value), to be designated by FDA, shall be released to Bravo Farms for the sole purpose of attempting to bring Lot 1 into compliance with the law.

B.    If and only if Defendants comply with all the terms of this Decree with respect to Lot 1, the condemned articles in Lot 2, consisting of approximately one-fifth (1/5) of the articles (by value) to be designated by FDA, shall be released to Bravo Farms for the sole purpose of attempting to bring Lot 2 into compliance with the law.

C.    If and only if Defendants comply with all the terms of this Decree with respect to Lot 2, the condemned articles in Lot 3, consisting of approximately one fifth (1/5) of the articles (by value), to be designated by FDA, shall be released to Bravo Farms for the sole purpose of attempting to bring Lot 3 into compliance with the law.

D.    If and only if Defendants comply with all the terms of this Decree with respect to Lot 3, the condemned articles in Lot 4, consisting of approximately one fifth (1/5) of the articles (by value), to be designated by FDA, shall be

released to Bravo Farms for the sole purpose of attempting to bring Lot 4 into compliance with the law.

E.   If and only if Defendants comply with all the terms of this Decree with respect to Lot 4, the condemned articles in Lot 5, consisting of approximately one fifth (1/5) of the articles (by value), to be designated by FDA, shall be released to Bravo Farms for the sole purpose of attempting to bring Lot 5 into compliance with the law.

In no event shall a Lot be released to Bravo Farms for the purpose of attempting to bring the condemned articles into compliance pursuant to this Decree unless there is on file with the Clerk of the Court a penal bond in the amount of one hundred eighty thousand dollars ($180,000).

9.   Within sixty (60) calendar days of receiving written authorization to commence reconditioning, Bravo Farms shall complete its attempt to bring the condemned articles into compliance with the law in accordance with the Reconditioning Proposal and under the supervision of FDA.  Within ten (10) calendar days after the expiration of this sixty (60) day period, Bravo Farms shall destroy, at its expense and under FDA's supervision, any article that has not been reconditioned in accordance with the Reconditioning Proposal, and shall file a notice with this Court certifying that such articles have been destroyed.  Bravo Farms shall reimburse the United States for

the costs of supervising Bravo Farms' attempt to bring the condemned articles into compliance with the law, at the rates set forth in paragraph 14.

10.  Defendants shall at no time, and under no circumstances whatsoever, directly or indirectly, cause or permit the shipment, sale, offer for sale, or other disposal of any part of the condemned articles until:  (a) FDA has had free access to the condemned articles in order to take any samples or conduct tests or examinations that are deemed necessary; and (b) FDA has released, in writing, the condemned articles for shipment, sale, or other disposition.

11.  Defendants shall at all times, until the condemned articles have been released in accordance with this Decree, retain the condemned articles intact for examination or inspection by FDA in a place made known to and approved by FDA, and shall maintain the records or other proof necessary to establish the identity of the articles to the satisfaction of FDA.

12.  Defendants shall not sell, ship, destroy, or dispose of, or permit or cause another person to sell, ship, destroy, or dispose of, the condemned articles or any part of the condemned articles in a manner contrary to the provisions of the Act, or other laws of the United States, or of any State or Territory (as defined in the Act), in which they are disposed of or sold.

13.  If Defendants breach any condition of this Decree, or of any subsequent decree or order in this proceeding, Bravo Farms shall, at its own expense, immediately return the condemned articles to the United States Marshal, or otherwise dispose of them pursuant to an order of this Court.  In the event that return of the condemned articles becomes necessary pursuant to this paragraph, Bravo Farms shall be responsible for all costs of storage and disposition that are incurred by the United States.

14.  Defendants shall reimburse the United States, pursuant to the terms of this Decree, for the costs associated with any inspections, examinations, reviews, evaluations, and analyses conducted pursuant to this Decree, at the standard rates prevailing at the time the activities are accomplished.  As of the date this Decree is signed by the parties, the rates are $87.57 per hour or fraction thereof per representative for time spent on supervision other than laboratory and analytical work; $104.96 per hour or fraction thereof per representative for laboratory and analytical work; 51 cents per mile for travel expenses; government rate or the equivalent for travel by air or other means; and the published government per diem rate or the equivalent for the areas in which the inspections are performed per representative and per day for subsistence expenses, where necessary.  In the event that the standard rates generally

applicable to FDA's supervision of court-ordered compliance are modified, these rates shall be increased or decreased without further order of this Court.

15.  The United States Attorney for this District, upon being advised by FDA that all of the preceding conditions of the Decree have been performed with respect to all of the condemned articles, and that Defendants have paid all costs as of that date, will transmit such information to the clerk of this Court, whereupon the penal bond given in this proceeding shall be returned to the Defendant.

16.  If Defendants fail to abide by and perform all the terms and conditions of this Decree, or of the bond, or any such further order or decree as may be entered in this proceeding, relating to the condemned articles, then, on motion of the United States in this proceeding, the bond shall be forfeited in its entirety to the United States, and judgment entered thereon in favor of Plaintiff.  Any condemned articles remaining in the custody of Defendants shall be destroyed by the United States Marshal pursuant to the terms in paragraph 17 of this Decree.

17.  If Bravo Farms does not avail itself, in the manner stated in this Decree, of the opportunity to:  (a) post a good and sufficient penal bond, pursuant to paragraph 5; or (b) submit a Reconditioning Proposal, pursuant to paragraph 6, the United States Marshal shall destroy the condemned articles

and make due return to this Court regarding their disposition.
Bravo Farms shall bear the costs of storage and destruction that
are incurred by the United States pursuant to this paragraph and
shall pay such costs within ten (10) calendar days of receiving
an invoice from FDA, the United States Marshal, or the United
Sates Attorney.

18.   Upon entry of this Decree, Defendants and each and all
of their officers, directors, agents, representatives,
employees, successors, assigns, attorneys, and any and all
persons in active concert or participation with any of them
(including individuals, directors, corporations, subsidiaries,
affiliates, and partnerships), are permanently restrained and
enjoined under the provisions of 21 U.S.C. § 332(a) from
directly or indirectly doing or causing any act that:

A.   violates the Act, 21 U.S.C. § 331(a), by
introducing, or delivering for introduction, into interstate
commerce articles of food that are adulterated within the
meaning of 21 U.S.C. § 342;

B.   violates the Act, 21 U.S.C. § 331(k), by causing
articles of food to be adulterated within the meaning of
21 U.S.C. § 342 while such articles are held for sale after
shipment in interstate commerce; or

C.   results in the failure to implement and
continuously maintain the requirements of this Decree.

11

19.   Defendants represent to the Court that, at the time of entry of this Decree, Defendants have permanently ceased all cheese manufacturing operations, including preparing, processing, and packing any cheese or cheese products, and holding and distributing any cheese prepared, processed, or packed by Defendants, except to the extent it is permitted by the foregoing provisions for disposition of the condemned articles.  If any Defendant later intends to resume cheese manufacturing operations, including preparing, processing, and packing any cheese or cheese products, and holding and distributing any cheese prepared, processed, or packed by Defendants, it shall:  (a) notify FDA in writing at least ninety (90) calendar days in advance of resuming operations; and (b) establish and implement all systems set forth in paragraph 20 of this Decree.  This notice shall also include, at a minimum, identification of the type(s) of cheese products Defendants intend to prepare, process, pack, or distribute and a detailed description of the corrections Defendants have made to assure that the intended cheese manufacturing operations will not cause the cheese products to become adulterated within the meaning of 21 USC 342(a).  No Defendant shall resume cheese manufacturing operations until all of the conditions set forth in paragraph 20 have been met, including:  (i) FDA has inspected Defendants' operations pursuant to paragraph 20(F) of this

12

Decree; (ii) Defendants have paid the costs of such inspection pursuant to paragraph 20(G) of this Decree; and (iii) Defendants have received written notice from FDA, as required by paragraph 20(H) of this Decree, and then Defendants shall resume operations only to the extent authorized in the written notice from FDA.

20.  Subject to the terms of paragraph 19, Defendants and each and all of their officers, directors, agents, representatives, employees, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, directors, corporations, subsidiaries, affiliates, and partnerships), are permanently restrained and enjoined under 21 U.S.C. § 332(a), and the inherent authority of this Court, from:  (a) preparing, processing, or packing at any of Defendants' facilities, including the facility located at 36005 Highway 99, Traver, California, and any new facility (hereinafter, collectively "Defendants' facilities" or "the facilities"), any cheese or cheese product; and (b) introducing, delivering for introduction, or causing the introduction or delivery for introduction of, any cheese or cheese product prepared, processed, or packed by Defendants in interstate commerce at or from Defendants' facilities, unless and until:

A.   Defendants retain, at their expense, an independent laboratory (the "laboratory") having no personal or financial ties (other than the retention agreement) to Defendants or their families and that is qualified to collect product and environmental samples at Defendants' facilities and analyze those samples for the presence of *Listeria monocytogenes* ("*L. mono*") and pathogenic *Escherichia coli* ("*E. coli*") in a method that is acceptable to FDA.  Defendants shall notify FDA in writing immediately upon retaining such laboratory and shall provide FDA a copy of the service contract.  Such service contract shall contain provisions, acceptable to FDA, for regular environmental and finished-product sample collection and analysis, including how and where to sample, the number and frequency of samples to be collected, and the methods of analysis, in accordance with the Monitoring Program discussed in paragraph 20(C) below;

B.   Defendants retain, at their expense, an independent expert(s) (the "sanitation expert") having no personal or financial ties (other than the retention agreement) to Defendants or their families, and who, by reason of background, education, training, and experience is qualified to inspect Defendants' facilities and to determine whether the methods, facilities, and controls are operated and administered in conformity with the Act and 21 C.F.R. Part 110.  Defendants

14

shall notify FDA in writing of the name(s) and qualifications of the sanitation expert(s) as soon as they retain such expert(s);

C.   Defendants' sanitation expert, in consultation with the laboratory, after review of all observations listed in the Form FDA-483 from the November 4 - December 1, 2010 FDA inspection, develops and submits to FDA a written Monitoring Program, acceptable to FDA, which shall include, at a minimum, the following:

1.   An effective written sanitation control program that establishes adequate methods, facilities, and controls for receiving, preparing, processing, packing, holding, and distributing articles of food to minimize the risk of introduction of *L. mono* and pathogenic *E. coli* into Defendants' food, and to ensure that articles of food are not adulterated, within the meaning of 21 U.S.C. § 342(a).  Such methods, facilities, and controls shall include, but not be limited to: (a) thoroughly cleaning, sanitizing, repairing, and renovating Defendants' facilities and all equipment therein to render the facilities and equipment suitable for use in receiving, preparing, processing, packing, holding, and distributing articles of food and to prevent the articles of food from becoming adulterated; and (b) instituting procedures to ensure that the facilities and equipment therein are continuously maintained in a sanitary condition;

2.   An effective program of environmental monitoring and testing of the facilities, conducted by the laboratory, to ensure that *Listeria species* (*L. spp.*) are controlled and *L. mono* and pathogenic *E. coli* are not present within Defendants' facilities.  Environmental monitoring shall include, but not be limited to, collecting swab samples from food-contact surfaces, equipment, and other environmental sites throughout the facilities (where the raw ingredients, in-process materials, and finished products are received, prepared, processed, packed, held, or distributed, and common areas that may be reservoirs for cross-contamination), and analyzing the samples, in a method acceptable to FDA.  Defendants shall ensure that the results of all analyses conducted pursuant to this paragraph are sent to FDA within two (2) calendar days of receipt by Defendants;

3.   A plan for remedial action, with provisions for segregating and holding in-process and finished product, should *L. spp.*, *L. mono*, pathogenic *E. coli*, or any other pathogenic organism be detected;

4.   A written employee training program that includes, at a minimum, instruction on sanitary food handling techniques and requirements for documenting that each employee has received such training; and

5.    A requirement to assign continuing responsibility for the operation of the Monitoring Program to a person or persons who, by reason of background, experience, or education is competent to maintain the facilities in a sanitary condition, coordinate with the laboratory, and implement any necessary remedial action(s), and to provide such person with the authority to achieve all necessary corrections.

D.    The sanitation expert, in consultation with the laboratory, develops and submits to FDA a proposed sampling protocol and testing methods, which, when accepted by FDA in writing, shall be used in conducting finished-product testing as described in paragraph 21(B).

E.    The sanitation expert certifies in writing to FDA that:

1.    the sanitation expert has inspected Defendants' facilities and the methods, processes, and controls used to receive, prepare, process, pack, hold, and distribute articles of food;

2.    all violations of the Act and its implementing regulations brought to Defendants' attention since November 4, 2010, by FDA, the sanitation expert, or any other source, including observations listed in the Form FDA-483 from FDA's November 4 - December 1, 2010 inspection, have been corrected; and

3.   Defendants' facilities and the methods, processes, and controls used to receive, prepare, process, pack, hold, and distribute articles of food comply with this Decree, the Act, and 21 C.F.R. Part 110.  As part of this certification, the sanitation expert shall include a detailed and complete report of the results of the expert's inspection;

F.   FDA, as it deems necessary to evaluate Defendants' compliance with the terms of this Decree, the Act, and all applicable regulations, conducts inspections of Defendants' facilities, including the buildings, sanitation-related systems, equipment, utensils, articles of food, and relevant records contained therein.

G.   Defendants have paid all costs associated with any inspections, examinations, reviews, evaluations, and analyses conducted by FDA pursuant to paragraph 20(F), at the rates set forth in paragraph 14.

H.   Defendants receive written notification from FDA stating that Defendants appear to be in compliance with the Act, its implementing regulations, and this Decree, and authorizing Defendants to:  (1) prepare, process, or pack at Defendants' facilities any cheese or cheese product, and (2) introduce, deliver for introduction, and cause the introduction or delivery for introduction into interstate commerce at or from Defendants'

facilities any cheese or cheese product prepared, processed, or packed by Defendants.

21.   After completing the requirements of paragraph 20, Defendants shall continuously implement the following steps to protect their cheese, cheese products, ingredients used to prepare, process, or pack cheese, and facilities against contamination with  *L. mono* or pathogenic *E. coli*:

A.   Effectively implement, on an ongoing basis, the Monitoring Program developed pursuant to paragraph 20(C).  In the event that Defendants, their sanitation expert, or laboratory determines that the Monitoring Program needs to be revised, Defendants shall provide suggested changes to FDA in writing and shall not implement such changes unless and until they are approved in writing by FDA;

B.   Conduct finished-product testing in the following manner:

1.   Immediately upon resumption of operations after the completion of the requirements of paragraph 20, Defendants shall test for *L. mono* and pathogenic *E. coli* in all lots of each food product for at least five (5) consecutive production days, using the sampling protocol and testing methodology developed pursuant to paragraph 20(D).  Defendants shall ensure that the results of all analyses conducted pursuant to this sub-paragraph, including the initial and/or any repeat

test results, are sent to FDA within two (2) calendar days of receipt by Defendants;

2.   After the completion of testing under paragraph 21(B)(1), Defendants shall test at least one lot of each food product per day for the next twenty (20) production days.  Defendants shall ensure that the results of all analyses conducted pursuant to this sub-paragraph, including the initial and/or any repeat test results, are sent to FDA within two (2) calendar days of receipt by Defendants;

3.   After the completion of testing under paragraph 21(B)(2), Defendants shall test at least one lot of each food product every five (5) production days for the next three (3) months.  Defendants shall ensure that the results of all analyses conducted pursuant to this sub-paragraph, including the initial and/or any repeat test results, are sent to FDA within two (2) calendar days of receipt by Defendants; and

4.   After the completion of testing under paragraph 21(B)(3), Defendants shall test at least one lot of each food product per quarter thereafter.  Defendants shall ensure that the results of all analyses conducted pursuant to this sub-paragraph, including the initial and/or any repeat test results, are sent to FDA within two (2) calendar days of receipt by Defendants.

If any laboratory test completed pursuant to paragraphs 21(B)(1)-(4), or the Monitoring Program described in paragraph 20(C), shows the presence of *L. mono* or pathogenic *E. coli* in the production environment or any article of food, then Defendants must immediately cease production and distribution of any in-process or finished product in Defendants' possession until they have determined and corrected the cause of the microbial contamination, and reported in writing to FDA the corrective steps they have taken.  Once the cause of the contamination has been corrected, Defendants shall reinstate the complete sequence of testing under this paragraph anew.

22.  Notwithstanding the requirements of any other provision in this Decree, Defendants shall not introduce, deliver for introduction, or cause the introduction or delivery for introduction of any article of food into interstate commerce manufactured using unpasteurized milk at or from Defendants' facilities unless and until Defendants have received prior written authorization from FDA, and, upon receipt of FDA authorization, begin anew the complete sequence of testing in paragraph 21.

23.  If, after notifying FDA of the name of the laboratory retained to conduct sample collection and analysis pursuant to paragraph 20(A), Defendants terminate or alter their service

contract with the laboratory in any way, Defendants shall notify FDA within five (5) business days of such termination or alteration of the service contract.  If Defendants contract with a new laboratory for collection and analysis services, Defendants shall provide a copy of any new or altered service contract, which shall conform to the requirements of paragraph 20(A), to FDA within five (5) business days of execution.

24.  If, at any time after entry of this Decree, FDA determines, based on the results of an inspection, sample analysis, or other information, that Defendants have failed to comply with any provision of this Decree, have violated the Act, or its implementing regulations, or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, notify Defendants in writing of the noncompliance and order Defendants to take appropriate corrective action, including, but not limited to, ordering Defendants to immediately take one or more of the following actions:

A.   Cease manufacturing, receiving, preparing, processing, packing, holding, and distributing any or all articles of food;

B.    Recall, at Defendants' expense, any article(s) of food that has (have) been distributed by, or is under the custody and control of, Defendants, their agents, customers, or consumers;

C.    Revise, modify, expand, or continue to submit any reports or plans prepared pursuant to this Decree;

D.    Submit additional samples of articles of food to a qualified laboratory to determine whether they are contaminated with chemicals, toxins, microorganisms, or filth;

E.    Reinstate, or increase the frequency of, the testing protocol required under paragraph 21(B);

F.    Take any other corrective actions as FDA, in its discretion, deems necessary to bring Defendants into compliance with this Decree, the Act, or its implementing regulations, including, but not limited to, requiring that Defendants re-implement or reinstitute any of the requirements of this Decree.

The provisions of this paragraph shall be apart from, and in addition to, all other remedies available to FDA.  Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's supervision, inspections, investigations, analyses, examinations, and reviews to implement and monitor recalls and other corrective actions, at the rates specified in paragraph 14.

25.   Defendants shall, upon receipt of an order under paragraph 24, immediately comply with the requirements in the order and the terms of paragraph 24 and shall notify FDA in writing of the corrective action(s) taken and, if appropriate, its schedule for completion.

26.   Any cessation of operations pursuant to paragraph 24 shall continue until FDA notifies Defendants in writing that they appear to be in compliance with this Decree, the Act, and its implementing regulations, and that Defendants may, therefore, resume operations.

27.   Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to inspect any of Defendants' facilities, including the facility located at 36005 Highway 99, Traver, California, and any new facility, and, without prior notice, take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, or and its implementing regulations.  During such inspections, FDA representatives shall be permitted to: (a) have immediate access to buildings, equipment, raw ingredients, in-process materials, finished products, containers, packaging material, labeling, and other promotional material therein; (b) take photographs and make video recordings; (c) take samples of Defendants' raw ingredients, in-process materials, finished products, containers, packaging

24

material, labeling, and other promotional material; and

(d) examine and copy all records, including electronic records, relating to the manufacture, receiving, preparing, processing, packing, holding, or distributing of any and all articles of food, and to the sanitation of the facilities.  The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials.  The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

28.  Defendants shall provide a copy of this Decree, personally or, when necessary, by registered mail, within ten (10) calendar days from the date of entry of the Decree, to each of their officers, directors, agents, representatives, employees, successors, assigns, owners and lessors of Defendants' facilities and manufacturing equipment, and attorneys.  Defendants shall also post a copy of this Decree in the employee common areas at each of Defendants' facilities so long as it remains in effect.  Within twenty (20) calendar days of the date of entry of this Decree, Defendants shall provide to FDA an affidavit of compliance, stating the facts and manner of compliance with the provisions of this paragraph.

29.  Defendants shall notify FDA in writing at least thirty (30) calendar days before any change in ownership, name, or character of their business that occurs after entry of this

Decree, including an incorporation, reorganization, creation of a subsidiary, relocation, dissolution, bankruptcy, assignment, sale, or any other change in the structure or identity of Bravo Farms, or the sale or assignment of any business assets, such as buildings, equipment, or inventory that may affect obligations arising out of this Decree.  Defendants shall provide a copy of this Decree to any prospective successor or assignee at least thirty (30) calendar days prior to any sale or assignment. Defendants shall furnish FDA with an affidavit of compliance with this paragraph no later than ten (10) calendar days prior to such assignment or change in ownership.

30.  All notifications, correspondence, and communications to FDA required by the terms of this Decree shall be addressed to the District Director, FDA San Francisco District Office, Attention: Consent Decree Correspondence, 1431 Harbor Bay Parkway, Alameda, CA 94502.

31.  Should Defendants fail to comply with any provision of this Decree, the Act, or its implementing regulations, then, on motion of the United States in this proceeding, Defendants shall pay to the United States of America:  (a) the sum of five thousand dollars ($5,000.00) in liquidated damages for each day such violation continues; (b) an additional sum of five thousand dollars ($5,000.00) in liquidated damages for each violation of this Decree, the Act, or its implementing regulations; and

(c) an additional sum in liquidated damages equal to twice the retail value of any shipments of adulterated articles of food. Defendants understand and agrees that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, and the Court to impose, additional criminal or civil penalties based on conduct that may also be the basis for payment of the liquidated damages.

32.   Should the United States bring, and prevail in, a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorney's fees (including overhead), investigational and analytical expenses, expert witness fees, travel expenses incurred by attorneys and witnesses, and administrative court costs, and any other costs or fees relating to such contempt proceedings.

33.   Defendants shall abide by the decisions of FDA and its representatives, which shall be final.  All decisions conferred upon FDA in this Decree shall be vested in FDA's discretion and, if contested, shall be reviewed by this Court under the arbitrary and capricious standard as set forth in 5 U.S.C. § 706(2)(A).  Review by a court of any FDA decision rendered pursuant to this Decree shall be based exclusively upon the

written record before FDA at the time the decision was made.  No discovery shall be taken by either party.

34.   This Court retains jurisdiction over this action for the purpose of enforcing or modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

35.   If Defendants have maintained a state of continuous compliance with this Decree, and all applicable laws and regulations for at least sixty (60) months after entry of this Decree, and Defendants have not resumed manufacturing cheese or cheese products at any point during that time, Defendants may petition FDA for leave to ask this Court for relief from this Decree insofar as it pertains to food other than cheese and cheese products prepared, processed, or packed by Defendants. If, at the time of the petition, in FDA's judgment, Defendants have maintained a state of continuous compliance with this Decree, the Act, and applicable regulations for at least sixty (60) months, Plaintiff will not oppose such a petition, and Defendants may request the Court to grant such relief.  In such circumstance, the Decree will remain in full force and effect with respect to manufacturing cheese and cheese products.

We hereby consent to the entry of the foregoing Decree.

|  |  |
|---|---|
|  | TONY WEST<br>Assistant Attorney General |
| /s/ Jonathan Van Ryn 4/29/2011<br>BRAVO FARMS CHEESE, LLC<br>Claimant and Defendant | MAAME EWUSI-MENSAH FRIMPONG<br>Acting Deputy Assistant<br>Attorney General |
|  | KENNETH L. JOST<br>Acting Director |
| /s/ Jonathan Van Ryn 4/29/2011<br>JONATHAN VAN RYN<br>Claimant and Defendant | BENJAMIN B. WAGNER<br>United States Attorney |
|  | KELLI L. TAYLOR<br>Assistant U.S. Attorney<br>501 I Street |
| /s/ Robert Nelms 4/29/2011<br>ROBERT NELMS<br>Attorney for Claimant and<br>  Defendant | Suite 10-100<br>Sacramento, CA 95814<br>Telephone:  916-554-2700 |

/s/ Shannon L. Pedersen 5/3/2011
SHANNON L. PEDERSEN
Trial Attorney
Office of Consumer Protection
Litigation
Department of Justice,
Civil Division
P.O. Box 386
Washington, DC 20044

Of Counsel:

WILLIAM B. SCHULTZ
Acting General Counsel

RALPH S. TYLER
Chief Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel,
  Litigation

29

```
JOHN H. FUSON
Associate Chief Counsel for
  Enforcement
United States Department of
  Health and Human Services
Office of the General Counsel
Food and Drug Division
10903 New Hampshire Ave.
Silver Spring, MD 20993-0002
Telephone:  301-796-8560
```

IT IS SO ORDERED.

Dated:   **May 9, 2011**              _____ **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE